AO 442 (Rev. 11/11) Arrest Warrant

## SEALED

# UNITED STATES DISTRICT COURT

for the

Northern District of Texas

*19-6407-Snow*

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| JOSE ANIBAL LINARES | ) |
| | ) |
| | ) |
| | ) |
| *Defendant* | |

Case No.   3:19-MJ-*604-BN*

## ARREST WARRANT

To:   Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*   JOSE ANIBAL LINARES                                                                ,
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment     ☐ Superseding Indictment     ☐ Information     ☐ Superseding Information     ☑ Complaint
☐ Probation Violation Petition     ☐ Supervised Release Violation Petition     ☐ Violation Notice     ☐ Order of the Court

This offense is briefly described as follows:

18 U.S.C. §§ 1341 and 1343   Knowingly and with intent to defraud, devise a scheme to defraud individuals, and for the purpose of executing and attempting to execute the scheme, mail and cause to be mailed matters and things through the United States Postal Service, and transmit or cause to be transmitted wire communications in interstate commerce [Mail Fraud and Wire Fraud]

Date:  7/3/19

Issuing officer's signature

City and state:  __Dallas, Texas

DAVID L. HORAN, U.S. Magistrate Judge
*Printed name and title*

| Return |
|---|

This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____
at *(city and state)* _____ .

Date: _____

_____
Arresting officer's signature

_____
*Printed name and title*

AO 91 (Rev. 11/11)  Criminal Complaint

SEALED

```
U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JUL - 3 2019
CLERK, U.S. DISTRICT COURT
By _____
        Deputy
```

# UNITED STATES DISTRICT COURT

for the

Northern District of Texas

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| JOSE ANIBAL LINARES | ) | Case No. |
| | ) | |
| | ) | 3:19-MJ- 604-BN |
| | ) | |
| Defendant(s) | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___May 2015 through July 2017___ in the county of ___Dallas___ in the
___Northern___ District of ___Texas___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1341 and 1343 | Knowingly and with intent to defraud, devise a scheme to defraud individuals, and for the purpose of executing and attempting to execute the scheme, mail and cause to be mailed matters and things through the United States Postal Service, and transmit or cause to be transmitted wire communications in interstate commerce [Mail Fraud and Wire Fraud] |

This criminal complaint is based on these facts:

See attached affidavit of FBI Special Agent Christine L. Edson.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

CHRISTINE L. EDSON, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___7/3/19___

_____
*Judge's signature*

City and state: ___Dallas, Texas___

DAVID L. HORAN, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Special Agent Christine L. Edson, after being duly sworn, depose and state as follows:

### Introduction

1.    I am a Special Agent with the Federal Bureau of Investigation ("FBI"), currently assigned to the Dallas Division, duly appointed and acting according to law. I have been a Special Agent since July 2012, and I am responsible for conducting investigations of complex financial crimes, to include wire fraud, mail fraud, money laundering, and securities fraud. Prior to my appointment as a Special Agent, I was employed as a Forensic Accountant with the Federal Bureau of Investigation for approximately three years. I have received training in such areas as financial analysis, financial investigative methods and applications, techniques for disguising and transmitting the proceeds of illegal activities, and asset forfeiture. I have also received training regarding computers, cellular telephones, and digital evidence.

2.    This affidavit is made in support of a criminal complaint against Jose Anibal Linares ("Linares") and sets forth facts establishing probable cause that Linares committed the following offenses in the Northern District of Texas: Mail Fraud, in violation of 18 U.S.C. § 1341, and Wire Fraud, in violation of 18 U.S.C. § 1343.

3.    The information contained in this affidavit is based on my personal observations during the course of the investigation; information conveyed to me by other law enforcement officials; interviews with witnesses to criminal activity; and my review of records, documents, and other physical evidence obtained during the investigation, as

described herein. This affidavit is limited in scope to information relevant to the purpose of seeking a criminal complaint and is not an exhaustive account of all information pertaining to Linares or this investigation.

## Summary of Probable Cause

4.     Inversiones JC Dallas S. DE. R. L., LLC ("Inversiones JC Dallas") was a purported investment company established in approximately May 2015 by Linares. Linares maintained offices for Inversiones JC Dallas at 9330 LBJ Freeway, 9th Floor, Dallas, Texas 75242 in the Northern District of Texas from approximately May 2015 to June 2017. In approximately July 2017, Linares moved the Inversiones JC Dallas office to 8330 LBJ Freeway, 8th Floor, Dallas, Texas 75242, also in the Northern District of Texas. Inversiones JC Dallas maintained a website at www.inversionesjcdallas.com.

5.     Beginning in at least May 2015 and continuing through July 2017, Linares devised a scheme to defraud individuals and, for the purpose of executing or attempting to execute the scheme, Linares (1) mailed or caused the mailing of matters and things through the United States Postal Service; and (2) transmitted, or caused to be transmitted, wire communications in interstate commerce. Linares told potential "investors" that he had an investment company called Inversiones JC Dallas and fraudulently induced them to sign contracts for their "investment," whereby they would provide a principal amount of money to Linares and in return, receive interest payments on a monthly basis for one year. Linares promised these individuals that, at the end of the one-year contract period, they could reinvest or have their principal amount returned to them. Linares gave varying explanations to the individuals about how he was able to generate the interest

payments, such as investing in real estate or making loans to other individuals. Based on my initial review of bank records and interviews of individuals, there is evidence that Linares used funds provided by later investors to pay back earlier investors – in effect, a Ponzi scheme. Furthermore, towards the end of the scheme, especially in 2017, Linares received funds from individuals, signed contracts with them, but he did not make any payments or return their funds at the end of the contract period.

## Facts Demonstrating Probable Cause

### Overview of Inversiones JC Dallas

6.      The FBI initiated an investigation into Linares and Inversiones JC Dallas in August 2017 based on information provided by individuals who invested money with Linares and reported that he had disappeared in August 2017. Numerous individuals contacted the FBI Dallas Division to file a complaint regarding Linares. According to Texas Secretary of State records, Linares established Inversiones JC Dallas in approximately May 2015 as a limited liability company. Linares set up an office for Inversiones JC Dallas at 9330 LBJ Freeway, 9th Floor, Dallas, Texas 75243 ("9330 LBJ Freeway office") in the Northern District of Texas. Many of the individuals I interviewed reported meeting Linares at the 9330 LBJ Freeway office. Toward the end of the scheme, in approximately July 2017, Linares relocated to 8330 LBJ Freeway, 8th Floor, Dallas, Texas 75243 ("8330 LBJ Freeway office"), also in the Northern District of Texas. Many of the individuals I interviewed reported seeking out Linares at the 8330 LBJ Freeway office, but found the office closed or abandoned by the end of August 2017.

7.     Inversiones JC Dallas operated by "word of mouth" through investment referrals. An individual who invested with Linares would receive a referral fee for any other individuals they brought in. Investors often received letters in the mail following their investment with Linares that referenced this referral fee and welcoming them to the "Inversiones family."

Overview of Phone Records

8.     Linares communicated by telephone with the victims of the scheme. I obtained subscriber information, toll records, and cell-site location records for telephones used by Linares from T-Mobile USA, cellular telephone assigned call numbers, (214) 962-4466 and (469) 206-6868 ("the Subject Phones"). T-Mobile records show that the registered subscriber for Subject Phone (214) 962-4466 was Linares's wife, Maria Trejo. Trejo is also listed as a member in the limited liability company records for Inversiones JC Dallas filed with the Texas Secretary of State. T-Mobile records show that the registered subscriber for Subject Phone (469) 206-6868 was Inversiones JC Dallas. Toll records for the Subject Phones show that Linares regularly communicated with victim investors, as will be further described below in summaries of my interviews with several victims.

Overview of Inversiones Bank Statements

9.     Linares maintained bank accounts for Inversiones JC Dallas at Bank of America, N.A. ("Bank of America") and Wells Fargo Bank, N.A. ("Wells Fargo Bank"). Many of the victims I interviewed invested by providing a check to Linares, which he deposited or cashed at these banks. Other victims invested by providing cash to Linares

and received a receipt for their investment. The Wells Fargo Bank accounts were primarily used from approximately May 2015 to April 2016.

10.     Linares opened Bank of America account XXXXXXXX7025 (account 7025) on or about June 16, 2016 in the name of Inversiones JC Dallas. Linares and his wife, Maria Trejo, were listed as signers on account 7025. From June 2016 to August 2017, approximately $1.2 million in checks and cashier's checks from possible investors was deposited into account 7025. During the same time period, approximately $836,000 was withdrawn in cash and $306,000 was used for payments to possible investors in the form of checks and cashier's checks.

Relevant Interviews – M.M. in Dallas, Texas

11.     On August 18, 2017, I interviewed M.M. at the FBI office in Dallas, Texas. M.M. was introduced to Linares by friends of hers that previously invested with Linares. M.M.'s friends received payments from Linares as returns on their investments. Based on the recommendation of her friends, M.M. met with Linares at the Inversiones JC Dallas office at 9330 LBJ Freeway on February 15, 2017. The meeting lasted a couple of hours, and M.M. had a lot of questions about Inversiones JC Dallas, which M.M. understood to be an investment company. Linares told M.M. he was investing in flipping residential homes and investing in commercial real estate, such as shopping centers, and had been doing so for several years. There were numerous people in the lobby waiting to talk to Linares. M.M. decided to invest $30,000 and signed a one-year contract with Linares. Linares explained that after a grace period of four months, M.M. would begin receiving monthly payments of $2,000 for the next eight months. At the end of the one-

year term, M.M. expected to receive her $30,000 investment back.

12.    M.M. visited the company website prior to investing. After making her investment with Linares, M.M. received a letter in the mail dated February 21, 2017. The letter referenced her investment and invited her to refer Inversiones JC Dallas to her family and friends for a referral fee. M.M. heard from other individuals that Linares was recruiting investors in other states. For example, if a current investor referred Linares to an out-of-state friend or family member, Linares would travel to meet that potential investor.

13.    M.M. expected to receive her first monthly payment in mid-July 2017, four months after her investment. On July 16, 2017, M.M. and other investors received a group text message from Linares that Inversiones JC Dallas had a new address and that payments would not be made until July 31, 2017. The new address provided in the text message was 8330 LBJ Freeway. M.M. received the text message from Subject Phone (214) 962-4466. The text message was M.M.'s last contact with Linares.

14.    M.M. visited the new office location on July 31, 2017. M.M. saw a plaque on the door for Inversiones JC Dallas, but the office was empty. M.M. talked to the security guard for the building, who informed her that people had been coming in all day looking for Linares. M.M. went back to the office the following Wednesday, August 2, 2017, and spoke to the leasing manager, A.T. A.T. told M.M. she had been in contact with Linares by e-mail and Linares had reported he was out of the country. A.T. told M.M. that Linares owed money to the leasing office. M.M. believed she was a victim of fraud and put together a list of investors with whom she had spoken or heard about from

other investors, which she provided in a complaint to the FBI Dallas Division on August 3, 2017.

15.   M.M. provided me with a copy of her contract, the letter from Inversiones JC Dallas, and her check for $30,300, which included $30,000 for "investment" and $300 for a "membership fee." I reviewed records for Bank of America account 7025 and verified that this check was deposited into the account on February 16, 2017.

Relevant Interviews – J.N. in Indian Trails, North Carolina

16.   On September 4, 2018, I interviewed J.N. telephonically. J.N. lived in Indian Trails, North Carolina. J.N. heard about Linares and his company Inversiones JC Dallas through his friend J.Z. J.Z. knew Linares from Honduras. J.Z. first heard about the opportunity to invest with Linares approximately two or three years prior to his investment. J.Z. had invested successfully with Linares for over a year before J.N. decided to invest as well. J.N. saw that J.Z. was receiving his payments from Linares and decided to invest.

17.   J.Z. traveled to Dallas before he invested with Linares and visited the Inversiones JC Dallas office. J.N. thought investing with Linares would be a safe investment because J.Z. had checked out the office and had invested successfully with Linares for over a year. J.N. spoke to Linares over the phone a couple of times prior to making his investment in March 2017. J.N. did not recall the exact details of his conversations with Linares over the phone, but thought it was a combination of information about the investment opportunity and the logistics of investing with Linares. Linares told J.N. he was "investing in different places," such as a water resort in

Honduras.  Linares told J.N. he had a lot of other people who were investing, who were doing okay with their investments.  Linares flew to North Carolina to meet in person with Linares and collect his check.  Linares met J.N. at J.Z.'s house in North Carolina on approximately March 25, 2017.  J.N. gave Linares a check for $7,000 for his investment and a check for $300 for a management fee for his investment.  J.N. signed a contract with Linares during the meeting in North Carolina.  Linares gave J.N. a copy of the contract and a receipt for his $7,000 investment.  The contract was for one year.  At the end of the contract, J.N. expected to receive his money back or renew his contract. Linares told J.N. he would receive $550 per month for his $7,000 investment after a waiting period of three months.  J.N. expected to receive his first payment in July 2017. The monthly payments were supposed to be deposited into J.N.'s bank account.  J.N. never received any payments for his investment with Linares.

18.     After his investment, J.N. received text messages from Linares.  Linares said he would pay referral fees if J.N. referred other people to him.  Linares used the Subject Phones to communicate with J.N.  J.N. used phone number (XXX) XXX-5265 to communicate with Linares.  J.N. tried to contact Linares at the aforementioned phone numbers after he did not receive his first monthly payment in July 2017, but Linares never responded.

19.     J.N. provided me with a copy of his contract and a receipt for $7,000.  I reviewed records for Bank of America account 7025 and verified that J.N.'s check for $7,000 was deposited into the account on March 27, 2017.

20.     I reviewed T-Mobile toll records and located telephone communications between the Subject Phones and phone number (XXX) XXX-5265 [J.N.]. For example, I located telephone communications between Subject Phone (469) 206-6868 [Linares] and phone number (XXX) XXX-5265 [J.N.] on June 16, 2017. Cell-site location records show that Subject Phone (469) 206-6868 [Linares] was located in Dallas, Texas on the date and time of the telephone communications on June 16, 2017. J.N. told me he (J.N.) was located in North Carolina when he made his investment and communicated with Linares.

Relevant Interviews – F.A. in Long Beach, California

21.     On June 22, 2018, I interviewed F.A. telephonically. F.A. lived in Long Beach, California. F.A. was referred to Linares and his company Inversiones JC Dallas from someone in the Dallas area. F.A. did not recall the name of the person who referred him to Linares. F.A. had limited experience investing through his E*TRADE Individual Retirement Account. F.A. recalled seeing Linares's website and verifying the authenticity of the company online prior to investing.

22.     F.A. talked to Linares over the phone in approximately the beginning of March 2017. F.A. used phone number (XXX) XXX-8186 to communicate with Linares. Linares told F.A. he invested in real estate and made loans to companies and individuals. Linares told F.A. if he invested, he could earn a decent interest rate on his money. Linares stated his company was "self-sustaining." Linares assured F.A. the money he invested would be insured. Linares told F.A. not to worry, that his investment would be safe.

23.    F.A. agreed to invest $12,000 with Linares.  Linares told F.A. he would travel to California to pick up the check from F.A.  F.A. subsequently received an e-mail regarding Linares's travel from an Inversiones JC Dallas e-mail account.  The signature line on the e-mail indicates it was sent by Y.E., who worked in Linares's office.  F.A. met Linares in the lobby of a hotel in California on March 30, 2017.  Linares made the same assurances regarding F.A.'s investment.  Linares told F.A. his money was insured and that the company was "self-sustaining."

24.    F.A. signed a contract with Linares for $12,000 and gave him a check for $12,300.  The check included a $300 subscription fee to be part of the company.  Linares told F.A. he was traveling to New York the next day to pick up an investment check from someone else.  The investment contract was for one year.  At the end of the year, F.A. could renew his contract or withdraw his money.

25.    F.A. was supposed to receive $800 per month for his investment.  F.A. provided his bank account information to Linares.  Linares told F.A. he would have someone deposit the monthly payments directly into his account from Dallas.  F.A. never received a single payment from Linares.  The contract specified there was a three-month "waiting period."  F.A. expected to receive his first payment in July 2017.  When F.A. called the Inversiones JC Dallas office in July 2017, no one answered the phone.

26.    F.A. provided me with a copy of his contract and a receipt for $12,000.  I reviewed records for Bank of America account 7025 and verified that F.A.'s check for $12,300 was deposited into the account on April 3, 2017.

27.     I reviewed T-Mobile toll records and located telephone communications between the Subject Phones and phone number (XXX) XXX-8186 [F.A.].  For example, I located telephone communications between Subject Phone (214) 962-4466 [Linares] and phone number (XXX) XXX-8186 [F.A.] on May 30, 2017.  Cell-site location records show that Subject Phone (214) 962-4466 [Linares] was located in Dallas, Texas on the date and time of the telephone communications on May 30, 2017.  F.A. told me he (F.A.) was located in California when he made his investment and communicated with Linares.

## Conclusion

28.     Based upon the facts presented above, there is probable cause that Linares devised a scheme to defraud individuals and, for the purpose of executing or attempting to execute the scheme to defraud, (1) mailed or caused the mailing of matters and things through the United States Postal Service, in violation of 18 U.S.C. § 1341 (Mail Fraud); and (2) transmitted, or caused to be transmitted, wire communications in interstate commerce, in violation of 18 U.S.C. § 1343 (Wire Fraud).

Respectfully submitted,

Christine L. Edson
Special Agent, Federal Bureau of Investigation

Subscribed and sworn to before me on this _30_ day of July, 2019.

David L. Horan
United States Magistrate Judge